Filed 1/14/19

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANUEL BUSANE,<br><br>    Defendant and Appellant. | 2d Crim. No. B283564<br>(Super. Ct. No. LA078878)<br>(Los Angeles County) |

Manuel Busane appeals from the judgment after a jury convicted him of two counts of forcible lewd acts on a child (Pen. Code,[1] § 288, subd. (b)(1)) and two counts of nonforcible lewd acts on a child (§ 288, subd. (a)), and found true allegations that he committed his crimes against multiple victims (§ 667.61, subds. (b), (c)(4) & (8), (e)(4)).  The trial court found true allegations that Busane suffered two prior strike convictions

---

* Pursuant to rules 8.1105(b) and 8.1110 of the California Rules of Court, this opinion is certified for publication with the exception of the Factual and Procedural History and parts 1, 2, 3, and 4 of the Discussion.

[1] All further statutory references are to the Penal Code.

(§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and two prior serious felony convictions (§ 667, subd. (a)), and that he served five prior prison terms (§ 667.5, subd. (b)).  It sentenced him to 116 years to life in prison.  The court awarded Busane 1,040 days of actual custody credits and no presentence conduct credits.

Busane contends:  (1) insufficient evidence supports his forcible lewd acts on a child convictions, (2) the trial court should have instructed the jury on the lesser included offenses of forcible lewd acts, (3) the court should have instructed the jury on the prohibition of dual convictions for alternative charges, (4) we should remand the case to permit the court to exercise its discretion to impose or strike the serious felony enhancements, and (5) he is entitled to presentence conduct credits.  In the unpublished portion of our opinion, we affirm Busane's convictions for forcible lewd acts, reverse his convictions for nonforcible lewd acts, and vacate his sentence.  In the published portion, we direct the trial court to determine Busane's entitlement to presentence conduct credits.

FACTUAL AND PROCEDURAL HISTORY

Sisters S.S. and J.G. lived with their family in Los Angeles.  R.D. rented a room in their home.  Busane was R.D.'s friend, and often visited the house.

In July 2014, S.S. and J.G., each five years old, were sitting on the couch and watching television with their older brother, R.S., and older sister, E.S.  Busane and R.D. walked through the living room.  R.S. thought Busane looked at S.S. "in a mischievous way."  He told her and J.G. to go play in their mother's bedroom.

Busane walked to the bedroom and told J.G. and S.S. to come out.  S.S. complied but J.G. did not.  Busane grabbed

2

J.G.'s hand and dragged her out of the room. He told her to open her mouth, and put his tongue inside when she did. He did the same to S.S.

A few minutes later, R.S. saw Busane with his sisters near the kitchen. Busane was kneeling down and holding J.G. and S.S. with his left hand; with his right hand, he was touching the girls' vaginal areas over their clothing. R.S. yelled, "What are you doing?!"

Busane ran outside. R.D. exited his bedroom and followed him. When R.S. described what he saw, R.D. called him a liar and said he had concocted the incident.

S.S. told R.S. that Busane touched her and pointed to her vaginal area. R.S. called his mother and told her what happened. She called the police. Before police arrived, S.S. and J.G. told R.S., E.S., and their parents that Busane touched their "private parts." S.S. also said he put his finger in her mouth. She was crying.

Officer Oscar Bocanegra responded to the house. S.S. told Bocanegra that Busane touched her with his fingers. She pointed to her vaginal area and the area between the legs of a teddy bear to indicate where.

R.S. told Bocanegra that he saw Busane bent over S.S. His left hand was on her back and his right was on her groin. J.G. was standing next to S.S.

Two weeks later, Detective Katherine Gosser interviewed S.S. and J.G. S.S. told Gosser that she and J.G. were in their parents' room when Busane told them to come out. The girls were reluctant to comply. S.S. said Busane grabbed J.G., put his tongue in her mouth, and fondled her. She said Busane then grabbed her, put his tongue in her mouth, and touched her

3

vagina over her clothes. R.S. saw what Busane was doing and yelled at him. R.S. and Busane then got into an argument.

A nurse also interviewed J.G. and S.S. S.S. told the nurse how Busane kissed her, put his tongue in her mouth, and touched her "peepee" over her clothes. J.G described how Busane put his tongue in her mouth and how he kissed her sister.

The prosecution charged Busane with two counts of forcible lewd acts on a child and two counts of nonforcible lewd acts. All four crimes were alleged to have occurred at the same time. The prosecutor explained to the trial court that the latter two charges were charged as lesser included offenses of the former.

During closing arguments, the prosecutor told the jury that the forcible lewd acts on a child charges were based on the same conduct as the nonforcible lewd acts charges. The trial court instructed the jury on the elements of both crimes. (CALCRIM Nos. 1110, 1111.) It also instructed the jury that "[e]ach of the counts charged in [the] case is a separate crime[.] You must consider each count separately and return a separate verdict for each one." (CALCRIM No. 3515.)

As the jury began deliberations, the trial court asked the prosecutor to explain the charges again. The prosecutor responded that the forcible and nonforcible lewd acts were charged in the alternative. The court said that its instructions were not accurate for alternative charges. The next morning, it gave the jury a unanimity instruction. (CALCRIM No. 3500.) It did not instruct the jury on the prohibition against dual convictions for alternative charges (CALCRIM No. 3516) or when lesser included offenses are charged separately from greater offenses (CALCRIM No. 3519).

4

At sentencing, the trial court denied Busane's motion to strike his two prior strike convictions.  (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).)  The court found it "unbelievable that [Busane] was [previously] sentenced to life in prison under the [t]hree [s]trikes [l]aw and got basically a second chance at life outside of prison. . . . [H]e was able to get another chance, and he just couldn't do it."  It imposed consecutive sentences of 58 years to life in prison on Busane's forcible lewd acts on a child convictions, as outlined in the prosecution's sentencing memorandum:  15 years to life on each conviction, tripled to 45 years because of the prior strikes, an additional 10 years for the prior serious felonies, and an additional three years for three of Busane's five prior prison terms.  Pursuant to section 654, it imposed and stayed terms of 25 years to life on each of the nonforcible lewd acts convictions.

DISCUSSION

*1. Sufficiency of the evidence*

Busane contends his forcible lewd acts on a child convictions should be reversed because of a lack of evidence that he used physical force to accomplish the acts.  We disagree.

A conviction for forcible lewd acts on a child requires proof that the defendant used "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" against the victim. (§ 288, subd. (b)(1).)  "Force" in this context means force "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto* (2011) 51 Cal.4th 229, 242 (*Soto*).)  "Duress" means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to . . . perform an act which otherwise would not

5

have been performed or . . . acquiesce in an act to which one otherwise would not have submitted." (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 50 (*Pitmon*), disapproved on another ground by *Soto*, at p. 248, fn. 12.)

We review the jury's verdicts for substantial evidence. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) Specifically, we "review[] the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which [the jury] could find . . . beyond a reasonable doubt" that Busane used force or duress against J.G. and S.S. (*Ibid.*) We will uphold Busane's convictions if there is substantial evidence of either. (*Pitmon, supra,* 170 Cal.App.3d at p. 48.)

There was sufficient evidence that Busane used force against J.G. and S.S. to accomplish his lewd acts. "[A]cts of grabbing, holding[,] and restraining that occur in conjunction with . . . lewd acts" can represent the force necessary to sustain a forcible lewd acts conviction. (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 (*Alvarez*).) Here, Busane grabbed J.G.'s hand and put his tongue in her mouth. He then grabbed S.S. and did the same. He held his arm against their backs while he fondled them, preventing their escape. Busane's acts of grabbing and restraining J.G. and S.S. constitute force substantially greater than necessary to accomplish lewd acts. (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1024 [restraining victim]; *Alvarez*, at p. 1005 [pulling on and restraining victims]; *People v. Babcock* (1993) 14 Cal.App.4th 383, 388 (*Babcock*) [grabbing victims and preventing their escape]; *People v. Mendibles* (1988) 199 Cal.App.3d 1277, 1307, disapproved on another ground by *Soto, supra,* 51 Cal.4th at p. 248, fn. 12 [pulling victim].)

6

Busane's reliance on *People v. Senior* (1992) 3 Cal.App.4th 765 and *People v. Schulz* (1992) 2 Cal.App.4th 999 is unpersuasive.  In both of those cases, the discussions of the force required to sustain the convictions were dicta because both courts held there was sufficient evidence of duress to sustain the defendants' forcible lewd acts convictions.  (*Senior*, at pp. 775-776; *Schulz*, at p. 1005.)  We join the courts that have rejected that dicta regarding the amount of force required.  (See, e.g., *Alvarez, supra*, 178 Cal.App.4th at p. 1004; *People v. Bolander* (1994) 23 Cal.App.4th 155, 160-161, disapproved on another ground in *Soto, supra*, 51 Cal.4th at p. 248, fn. 12; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1789-1790, disapproved on another ground in *Soto*, at p. 248, fn. 12; *Babcock, supra*, 14 Cal.App.4th at p. 388.)  Under the circumstances present here, the amount of force used was sufficient to sustain the convictions.

The circumstances also show that J.G. and S.S. were under duress when Busane committed his lewd acts.  J.G. and S.S. were both five years old at the time of Busane's assault.  Busane was over 50.  Busane approached the girls in their mother's bedroom, outside the presence of other adults.  The girls were scared and reluctant to comply with his orders to exit the bedroom, and did not do so until he used force against them.  He then fondled them in the kitchen—again, outside the presence of other adults.  Busane's size, age, and use of force, plus the isolated areas in which he committed his crimes, show that J.G. and S.S. submitted to acts to which they otherwise would not have submitted.  (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14, disapproved on another ground by *Soto, supra*, 51 Cal.4th at p. 248, fn. 12 [defendant's physical domination and control of victim can give rise to duress]; *People v. Espinoza* (2002) 95 Cal.App.4th

7

1287, 1320 [relative ages and sizes of defendant and victim can give rise to duress]; *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 238 [assaulting victim in an isolated area can give rise to duress].)

### 2. *Lesser included offense instructions*

Busane next contends the trial court prejudicially erred because it did not instruct the jury on nonforcible lewd acts on a child as a lesser included offense of forcible lewd acts. (*People v. Shockley* (2013) 58 Cal.4th 400, 403 [trial court has sua sponte duty to instruct on lesser included offense if there is substantial evidence the defendant is guilty of only that offense]; *Babcock*, *supra*, 14 Cal.App.4th at p. 392 [forcible lewd acts charge necessarily includes nonforcible lewd acts charge].) But the prosecution here elected to charge Busane with both forcible and nonforcible lewd acts as alternative charges. The court instructed the jury on the elements of each. It was not required to do so twice. (*People v. Lewis* (2001) 25 Cal.4th 610, 653.)

### 3. *Lack of instructions on alternative charges*

Busane contends the judgment should be reversed because the trial court did not instruct the jury on the prohibition against dual convictions for alternative charges or on the prohibition against dual convictions when lesser included offenses are charged separately from greater offenses.[2] (See

---

[2] The Attorney General claims Busane forfeited his contention because he did not request the instructions at trial. But defendants may assert instructional error for the first time on appeal if the error affected their substantial rights. (*People v. Gamache* (2010) 48 Cal.4th 347, 375, fn. 13; see §§ 1259, 1469.) Thus, to the extent any instructional error contributed to Busane's conviction and sentence, we may review it. (*Gamache*, at p. 375, fn. 13.)

CALCRIM Nos. 3516, 3519.)  We agree that the court erred, and reverse Busane's nonforcible lewd acts convictions.

A defendant cannot be convicted of both a greater offense and a lesser included offense based on the same act. (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.)  If the prosecution charges the defendant with both offenses, the trial court has a sua sponte duty to instruct the jury that dual convictions are prohibited.  (*People v. Fields* (1996) 13 Cal.4th 289, 309-310.) Whether the court was required to so instruct the jury here presents a mixed question of law and fact for our independent review.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

The prosecutor made clear that the forcible lewd acts charges were based on the same conduct alleged in the nonforcible lewd act charges, and that the latter charges were charged as lesser included offenses of the former.  But the trial court instructed the jury that each charge was for a separate crime and required a separate verdict.  It should have instead instructed the jury that it could not convict Busane of the nonforcible lewd act charges unless it found him not guilty of the forcible lewd act charges.  (*People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1585.)  The court's error requires reversal of Busane's nonforcible lewd acts convictions.  (*People v. Moran* (1970) 1 Cal.3d 755, 763 [reversal of lesser offense required where substantial evidence supports conviction of greater offense].)  In light of our reversal, the instructional error was harmless.  (*People v. Black* (1990) 222 Cal.App.3d 523, 525; see *People v. Tideman* (1962) 57 Cal.2d 574, 581-582 [reversal of lesser conviction does not "affect the integrity of the conviction and sentence for the greater"].)

9

*4. Prior serious felony enhancements*

When the trial court sentenced Busane, section 667, subdivision (a), required it to impose a five-year sentence enhancement for each of his prior serious felony convictions. Section 1385, then-subdivision (b), prohibited the court from striking those enhancements. Effective January 1, 2019, the court has discretion to strike the enhancements for sentencing purposes. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971 (*Garcia*); see § 1385, subd. (b)(1).)

Busane contends, and the Attorney General concedes, the amendments to sections 667 and 1385 apply retroactively to his case because it is not yet final. We agree. (*Garcia*, *supra*, 28 Cal.App.5th at p. 973; see *In re Estrada* (1965) 63 Cal.2d 740, 744.) The parties disagree on the property remedy, however: Busane claims remand is required to permit the trial court to exercise its discretion to impose or strike the section 667 enhancements. The Attorney General claims remand is unwarranted because the court "clearly indicated" that it would not have struck the enhancements.

A trial court must exercise "informed discretion" when sentencing a defendant. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) If the court proceeds on the assumption that it lacks discretion, remand for resentencing is required unless the record "clearly indicates" that the court would have reached the same conclusion had it been aware of its discretionary powers. (*Ibid.*)

Here, the record does not clearly indicate that the trial court would have imposed the two serious felony enhancements had it had the discretion to strike them. At sentencing, the court denied Busane's *Romero* motion, and found

10

it "unbelievable" that he would squander his chance to remain outside of prison after his previous life sentence was vacated. And it imposed the maximum sentence possible. But the court did not express its intent to do so. (*People v. Billingsley* (2018) 22 Cal.App.5th 1076, 1081.) Nor did it state that it would have imposed the enhancements if it had the discretion to strike them. (*People v. Chavez* (2018) 22 Cal.App.5th 663, 713.) Instead, the court simply followed the calculation of Busane's sentence, as outlined in the prosecution's sentencing memorandum.

Remand is accordingly required. (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) On remand, the trial court must hold a resentencing hearing to determine whether to impose or strike the two five-year serious felony enhancements attached to each of his forcible lewd acts on a child convictions.

### 5. *Presentence conduct credits*

At the conclusion of sentencing, Busane requested credits for the 1,040 days he spent in presentence custody. The trial court granted his request for custody credits, but refused to grant conduct credits. The court said he was not entitled to conduct credits pursuant to sections 667.61 and 2933.5.

Busane contends the trial court erred when it determined that he was ineligible for presentence conduct credits. (*People v. Acosta* (1996) 48 Cal.App.4th 411, 420 [party may challenge presentence credit calculation for the first time on appeal if there are other issues raised].) We agree.

Defendants sentenced to prison are entitled to credits against their terms of imprisonment for all actual days spent in custody prior to sentencing. (§ 2900.5, subd. (a).) And absent statutory authority to the contrary, defendants are also entitled to presentence conduct credits if they perform assigned labor and

11

comply with jailhouse rules and regulations. (§ 4019, subds. (a)(4), (b) & (c); see *People v. Thomas* (1999) 21 Cal.4th 1122, 1125 (*Thomas*).) This includes defendants who, like Busane, receive indeterminate life sentences. (See, e.g., *People v. Brewer* (2011) 192 Cal.App.4th 457, 461-464 (*Brewer*); *People v. Philpot* (2004) 122 Cal.App.4th 893, 907-909.) Presentence conduct credits are limited to 15 percent of the time spent in custody for defendants convicted of violent felonies. (§ 2933.1, subd. (c).)

Whether statutory authority limits Busane's entitlement to presentence conduct credits presents an issue of statutory interpretation for our independent review. (*Brewer*, *supra*, 192 Cal.App.4th at p. 461.) Our primary purpose is to effectuate the Legislature's intent. (*People v. Licas* (2007) 41 Cal.4th 362, 367.) We first look to the words of the statute. (*Ibid.*) If the statutory language is clear and unambiguous, its plain meaning governs. (*Ibid.*) In the absence of ambiguity, we presume the Legislature "meant what it said, and [do] not resort to legislative history to determine the statute's true meaning." (*People v. Cochran* (2002) 28 Cal.4th 396, 401 (*Cochran*).)

The trial court here relied on two statutes—sections 667.61 and 2933.5—when it denied Busane presentence conduct credits. Neither was a proper basis for denial.

If a statute does not refer to an issue, its meaning is clear: The statute does not pertain to that issue. (*Thomas*, *supra*, 21 Cal.4th at p. 1125.) "[A] court is not authorized to insert qualifying provisions not included [in the statute,] and may not rewrite [it] to conform to an assumed intention [that] does not appear from its language." (*People v. One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475.) "The court is [instead] limited to the intention expressed." (*Ibid.*)

12

Section 667.61 does not refer to presentence conduct credits. It thus does not render Busane ineligible for presentence conduct credits. (*Thomas*, *supra*, 21 Cal.4th at p. 1125 [where provision of three strikes law does not mention presentence conduct credits, its meaning is clear and does not affect the credit calculation].)

The plain language of section 667.61 also undermines the Attorney General's argument that the legislative history evidences the Legislature's intent that the statute bars presentence custody credits for defendants subject to its provisions. Where, as here, the Legislature's expressed intent is clear from the language of the statute, we do not consider its legislative history. (*Cochran*, *supra*, 28 Cal.4th at p. 401; *Thomas*, *supra*, 21 Cal.4th at p. 1125.) We disagree with our colleagues in the First District who have done so to reach a contrary conclusion. (See *People v. Cervantes* (2017) 9 Cal.App.5th 569, 618-619, review granted May 17, 2017, S241323, review dismissed, cause remanded Feb. 28, 2018, disapproved of on another ground by *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 314-315.)

The trial court also erred when it relied on section 2933.5 to deny Busane presentence conduct credits. That section provides that defendants convicted of certain violent felonies, including forcible lewd acts on a child, are ineligible for presentence conduct credits if they have two or more prior convictions and have served two or more prior prison terms for violations of listed felonies. But it is the Department of Corrections and Rehabilitation, not the trial court, that makes the initial determination of whether a defendant is ineligible for conduct credits pursuant to section 2933.5. (*People v. Goodloe*

13

(1995) 37 Cal.App.4th 485, 492-494.)  The court's invocation of that section at sentencing was premature.  (*Id.* at pp. 494-495.)  Perhaps more importantly, we note that, though the jury convicted Busane of a listed felony (see § 2933.5, subd. (a)(2)(J)), none of the *prior* conviction allegations the trial court found true was for a listed felony.  Thus, even if it were appropriate for the court to determine Busane's ineligibility for presentence conduct credits in the first instance, its determination was incorrect.

We accordingly hold that the only limitations on Busane's accrual of presentence conduct credits were those set forth in sections 2933.1 and 4019.  Here, Busane was convicted of two violent felonies.  (See § 667.5, subd. (c)(6).)  He spent 1,040 days in presentence custody.  He is therefore entitled to up to 156 days of conduct credits if he performed his assigned labor and complied with jail rules.

But the trial court made no findings regarding whether Busane performed labor or complied with the rules.  It is inappropriate for this court to do so in the first instance.  Instead, we remand with directions to the trial court to determine whether Busane performed his assigned labor and complied with jail rules and regulations and, if so, to calculate and award him the appropriate conduct credits.  (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 [incorrect calculation of custody credits is an unauthorized sentence that may be corrected at any time].)

DISPOSITION

Busane's convictions for nonforcible lewd acts on a child are reversed.  The case is remanded to the trial court with directions to hold a hearing to:  (1) exercise its newfound discretion to impose or strike the prior serious felony enhancements, (2) determine whether Busane is entitled to

14

presentence conduct credits, and, if so, (3) calculate and award those credits. Busane has the right to assistance of counsel at the remand hearing, and, unless he chooses to waive that right, the right to be present. After the hearing, the clerk of the court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.


15

Michael V. Jesic, Judge

Superior Court County of Los Angeles

_____

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, David E. Madeo, Daniel C. Chang and Michel Keller, Deputy Attorneys General, for Plaintiff and Respondent.